```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
IRVING ROSS, TYRONE FOSTER, on behalf      :
of themselves and of all other similarly situated :
persons,                                   :
                                           :
                    Plaintiffs,            :
                                           :          MEMORANDUM AND ORDER
            -against-                      :          20-cv-00167 (DLI) (RER)
                                           :
ARROW LINEN SUPPLY COMPANY, INC.,          :
SALVATORE MAGLIOCCO, and JOHN              :
ANTHONY MAGLIOCCO,                         :
                                           :
                    Defendants.            :
----------------------------------------------------------- x
```

**DORA L. IRIZARRY, United States District Judge:**

On January 8, 2020, Plaintiffs Irving Ross ("Ross") and Tyrone Foster ("Foster") (collectively, "Plaintiffs") filed a complaint against their former employer, Arrow Linen Supply Company Inc. ("Arrow Linen") and its owners, Salvatore Magliocco and John Anthony Magliocco (collectively, "Defendants"). *See*, Compl., Dkt. Entry No. 1. On May 4, 2020, Plaintiffs filed an amended complaint on behalf of themselves and those similarly situated, alleging that Defendants failed to pay their employees for overtime and at the legally required minimum hourly wage, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq*, and the New York Labor Law ("NYLL"). *See*, First Am. Compl. ("FAC"), Dkt. Entry No. 19, at ¶¶ 80-122.

Defendants moved to dismiss this action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), contending that Plaintiffs' claims are barred under the applicable statute of limitations. *See*, Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss Pls.' Am. Compl. ("Defs.' Mem."), Dkt. Entry No. 26, at 6. Plaintiffs opposed. *See*, Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss the Am. Compl. ("Pls.' Opp'n"), Dkt. Entry No. 28. Defendants replied.

*See*, Defs.' Reply Mem. of Law in Supp. of Their Mot. to Dismiss Pls.' Am. Compl. ("Defs.' Reply"), Dkt. Entry No. 30. For the reasons set forth below, Defendants' motion to dismiss is granted, and this action is dismissed with prejudice.

## BACKGROUND

**I.    The Instant Action Involving Ross and Foster**

The following facts are taken from the Complaint, as well as documents that are integral to the Complaint, and are accepted as true for purposes of this decision. *See*, *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 87 (2d Cir. 2013). In support of their motion to dismiss, Defendants submitted exhibits, which include the Complaint, So Ordered Stipulation, and Notice of Class Action Lawsuit from *Rios v. Arrow Linen Supply Co., Inc. et al.*, No. 16-cv-00801 (RER). *See*, Exs. C, D-E to Decl. of Jeffrey M. Schlossberg in Supp. of Defs.' Mot. to Dismiss Am. Compl. ("Schlossberg Decl."), Dkt. Entry Nos. 24-2, 24-4, 24-5.

The Court considers the abovementioned records from *Rios* because Plaintiffs heavily referenced the records as the basis for their equitable tolling argument and, thus, are integral to the Complaint. *See*, *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (A complaint is "deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint.") (internal quotation marks and citations omitted). Additionally, the *Rios* records are public filings that the Court may consider for purposes of resolving the instant motion. *See*, *Rios*, No. 16-cv-00801, Dkt. Entry Nos. 1, 28, 26-1. *See also*, *Kavowras v. N.Y. Times Co.*, 328 F.3d 50, 57 (2d Cir. 2003) ("Judicial notice may be taken of public filings[.]").

Arrow Linen is a Brooklyn based company that supplies uniforms, aprons, linens, towels, beddings, and other textile items to restaurants, country clubs, beauty salons, hotels, and other

businesses in New York, New Jersey, and Connecticut. FAC at ¶¶ 11, 23-24. Arrow Linen primarily uses trucks and vans to deliver supplies along designated routes throughout the tristate region. *Id.* at ¶¶ 24-27. John Anthony Magliocco is the president and a partial owner of Arrow Linen, who manages the company's employees. *Id.* at ¶¶ 14-16. Salvatore Magliocco is the vice president and a partial owner of Arrow Linen, who is known as the "money man" because he pays employees in cash for their work. *Id.* at ¶¶ 18-20.

Ross is a Brooklyn resident who was an employee at Arrow Linen from 2010 to the end of 2014, with a gap in 2012 due to an injury. *Id.* at ¶ 9. Arrow Linen initially hired Ross as a helper, but he regularly worked as a driver. *Id.* at ¶ 39. Prior to his injury in 2012, Ross worked five days a week, clocking in at 6:00 AM and finishing his work as late as 6:00 PM or 7:00 PM. *Id.* at ¶ 41. After he returned from leave for his injury in 2013, Ross worked five days a week, clocking in at 4:00 AM and finishing his work around 2:00 or 3:00 PM. *Id.* at ¶ 42. For the five days per week that Ross worked on the clock, he was paid $11.00 per hour. *Id.* at 40. Ross also worked a full sixth day during the week, receiving a cash payment of $80.00 per day, off the books. *Id.* at ¶¶ 40, 44.

At some point during his employment, Ross realized that Defendants were not paying him for all the hours that he worked, so he complained to his union shop steward and supervisors. *Id.* at ¶ 43. The supervisors told Ross to bring his complaint to the "boss," John Anthony Magliocco. *Id.* Ross decided not to pursue his complaint further because he was scared that he would lose his job. *Id.*

Foster is a Queens resident and was employed at Arrow Linen from 2005 to the end of 2014. *Id.* at ¶ 10. When Foster worked as a driver for a Long Island route, he worked five days a week, clocking in at 7:00 AM and finishing his work as late as 7:00 PM or 8:00 PM. *Id.* at ¶ 47.

During his final three years with Arrow Linen, Foster drove a van on a Brooklyn route. *Id*. at ¶ 48. For this route, he clocked in at 7:00 AM and finished work at 5:00 PM or later. *Id*. Foster received approximately $17.00 an hour for the hours he worked on the clock. *Id.* at ¶ 46. In addition, when he worked a full sixth day during the week, he received a lump sum payment of $100.00 in cash, off the books. *Id.* at ¶¶ 46, 49. This usually occurred twice a month. *Id*.

According to Plaintiffs, Defendants automatically deducted an hour of payment for lunch each day they worked on the clock, even though Plaintiffs never were afforded a full hour lunch break. *Id.* at ¶ 6. Plaintiffs allege that Defendants regularly required Plaintiffs to work after they clocked out, resulting in unpaid wages for extra hours worked. *Id.* at ¶¶ 32-35. Plaintiffs further allege that Defendants made Plaintiffs work during their off days and non-shift hours, instructing them to work without clocking in and off the books. *Id.* at ¶ 36. Defendants then paid Plaintiffs a lump sum amount in cash. *Id.* at ¶¶ 36-37. Lastly, Plaintiffs claim that Defendants never provided them with accurate wage statements of their payments and all the hours they worked. *Id*. at ¶ 38.

Plaintiffs bring a total of five causes of action under the FLSA and NYLL. *Id.* at ¶¶ 68, 71. For their FLSA collective action claims, Plaintiffs allege that Defendants violated the minimum wage, overtime, and record keeping requirement provisions under the FLSA. *Id.* at ¶¶ 80-101; 29 U.S.C. §§ 206, 207, 211(c), and 215(a). For their supplemental class action claims, Plaintiffs allege that Defendants violated the minimum wage, overtime wage, "spread of hours," and notice requirement provisions under the NYLL. FAC at ¶¶ 102-22; *See also*, N.Y. Lab. Law §§ 190, *et seq.*, 650, *et seq.*; N.Y. Comp. Codes R. & Regs. Tit. 12, §§ 142-2.2, 142-2.4.

**II.     Previous Lawsuits Involving Defendants**

In November 2019, approximately five years after he had stopped working for Defendants, Ross learned that two former Arrow Linen employees, Marquese Paige ("Paige") and Danny Rios

4

("Rios"), had filed lawsuits on January 5, 2016 and February 16, 2016, respectively, against Arrow Linen, Salvatore Magliocco, and John Anthony Magliocco.[1]  FAC at ¶¶ 50-51, 62; *See also*, *Paige v. Arrow Linen Supply Co., Inc., et al.*, No. 16-cv-00032 (RER); *Rios*, No. 16-cv-00801.  Similar to the instant action, the two lawsuits each alleged that Defendants had violated the FLSA and NYLL.  FAC at ¶¶ 50-51.

On June 1, 2016, *Paige* and *Rios* were consolidated for purposes of discovery and collective/class action certification.  *Id.* at ¶ 52; *See also*, Complaint in *Rios* ("*Rios* Compl."), Ex. C to Schlossberg Decl., Dkt. Entry No. 24-2.  On August 11, 2016, the Honorable Ramon E. Reyes, Jr., United States Magistrate Judge of this Court, approved the *Paige* and *Rios* parties' joint motion to certify an FLSA collective action and the parties' proposed collective action notice to a defined set of Arrow Linen employees.  *See*, So Ordered Stipulation, Ex. E to Schlossberg Decl., Dkt. Entry No. 24-4; *See also*, Notice of Lawsuit, Ex. F to Schlossberg Decl., Dkt. Entry No. 24-5.  The *Paige* and *Rios* parties agreed to send the notice to the following Arrow Linen employees: "all drivers, delivery persons and helpers who are or were employed at Arrow Linen Supply Company, Inc. between January 5, 2013 and [August 2016] ("FLSA Collective/Class' Members"), and (1) were regularly paid cash on a flat sum day rate basis, or (2) paid in cash for extra work after hours and on weekends . . . ."  *See*, So Ordered Stipulation at ¶ 1; *See also*, Defs.' Mem. at 4.

The *Paige* and *Rios* parties stipulated that, within fifteen days of the approval of the notice under Section 216(b) of the FLSA, the defendants' counsel shall provide plaintiffs' counsel with "the names, addresses, dates of employment, positions of employment and phone numbers of all FLSA Collective/Class' Members ('Identifying Information') to the extent that the Identifying Information is in the possession of the Defendants."  So Ordered Stipulation at ¶ 2.  The parties

---

[1] Plaintiffs erroneously refer to Marquese Paige as Paige Marchese throughout the FAC.  *See*, *generally*, FAC.

further stipulated that, within five days of the receipt of the identifying information from the defendants' counsel, the *Paige* and *Rios* plaintiffs' counsel shall distribute the 216(b) Notice, both in English and Spanish, "by regular mail to the FLSA Collective/Class' Members." *Id*. at ¶ 3.

The actual notice sent to the agreed upon FLSA collective/class members includes the following:

> If you worked at Arrow Linen Supply Company, Inc. on or after January 5, 2013 as a Driver, Helper or Delivery Person and (1) were regularly paid cash on a flat sum day rate basis, or (2) paid in cash for extra work after hour and on weekends, please read this Notice.

Notice of Lawsuit at 1. Once the notice was distributed, ten additional employees consented to join the *Rios* case as collective action plaintiffs. *See*, *Rios*, No. 16-cv-00801, Dkt. Entry No. 53. Paige decided to drop his putative action claims and proceeded as a single plaintiff, eventually settling the case after entering a private mediation with the defendants. *See*, *Paige*, 16-cv-00032, Dkt. Entry. Nos. 32, 38. The eleven plaintiffs in *Rios* also reached a settlement agreement with the defendants through a mediation. *See*, *Rios*, No. 16-cv-00801, Dkt. Entry No. 53. *Paige* and *Rios* were terminated on June 16, 2017 and March 19, 2018, respectively. *See*, *Paige*, 16-cv-00032, Electronic Order, dated June 16, 2017; *Rios*, 16-cv-00801, Electronic Order, dated March 19, 2018.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must "state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (citations and internal quotation marks omitted). The plausibility standard "does not require 'detailed factual allegations,' but it demands more than [ ] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). *Iqbal* requires more than "'a formulaic recitation of the elements of a cause of action.'" *Id.* at 681

6

(quoting *Twombly*, 550 U.S. at 555). On a motion to dismiss, the court accepts as true all well pled factual allegations and draws all reasonable inferences in the plaintiff's favor. *See Dangler v. N.Y.C. Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1999).

Affirmative defenses based on a statute of limitations may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See*, *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss."). If a defendant succeeds in showing that the statute of limitations has run on a claim, dismissal is appropriate for failure to state a claim upon which relief may be granted. *See*, *United States v. N. Adult Daily Health Care Ctr.*, 205 F. Supp.3d 276, 303 (E.D.N.Y. 2016) (collecting cases).

## DISCUSSION

### I. FLSA Claims

Defendants seek to dismiss Plaintiffs' FLSA claims because they are barred under the statute of limitations. *See*, Defs.' Mem. at 6-7. "The FLSA provides a two-year statute of limitations on actions to enforce its provisions, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 70 (2d Cir. 2014) (quoting 29 U.S.C. § 255(a)). Plaintiffs allege that Defendants willfully violated their employees' rights under the FLSA, thereby invoking the three-year statute of limitations. *See*, FAC at ¶¶ 90-91, 99-100.

Plaintiffs commenced this action five years after their employment with Defendants had ended. *See*, *generally*, Compl. (Plaintiffs initiated the instant action on January 8, 2020); *See also*, FAC at ¶¶ 9-10 (Plaintiffs terminated their employment with Arrow Linen at the end of 2014).

7

Accordingly, Plaintiffs' claims are time barred, unless the statute of limitations is tolled. *See*, *Parada*, 753 F.3d at 70-71.

Plaintiffs argue that the statute of limitations must be tolled as a remedy for Defendants' alleged willful violation of Magistrate Judge Reyes' Order in *Paige* and *Rios*. *See*, FAC at ¶¶ 57, 60-61, 66-67; Pls.' Opp'n at 7. "Ordinarily, equitable tolling is an issue determined on a motion for summary judgment or at the time of trial since it is heavily fact dependent." *Kai Yan Lai v. Wai Mon Leung*, 2012 WL 4472155, at *5 (E.D.N.Y. Aug. 31, 2012) (citations omitted) *report and recommendation adopted by Kai Yan Lai v. Wai Mon Leung*, 2012 WL 4472143 (E.D.N.Y. Sept. 26, 2012). Nonetheless, Plaintiffs' allegations in favor of equitable tolling are not sufficient to defeat Defendants' motion to dismiss. *See*, *Id*. (finding that dismissal of complaint is appropriate as a matter of law when, based on a plaintiff's allegations in favor of equitable tolling, "she cannot avail herself of that doctrine to avoid the consequences of the expiration of the statute of limitations") (citing *Leonhard v. U.S.*, 633 F.2d 599, 609 n.11 (2d Cir. 1980)).

In *Paige* and *Rios*, Defendants were required to provide the plaintiffs' counsel with the identifying information of employees who fit the agreed upon definition of the FLSA collective/class members. *See*, So Ordered Stipulation; *See also*, FAC at ¶¶ 55-56; Pls.' Opp'n at 4. Plaintiffs contend that they did not receive the notice to join the *Rios* suit at the time because Defendants deliberately withheld their information from plaintiffs' counsel in order to minimize the number of opt-in plaintiffs. *See*, FAC at ¶¶ 57, 60-61, 66-67; Pls.' Opp'n at 4-5.

Defendants admit that "Plaintiffs were not included in the negotiated list in *Rios* . . . because they did not meet the collective definition." Defs.' Mem. at 5, n.6. Plaintiffs characterize this admission as a willful violation of Magistrate Judge Reyes' Order. *See*, FAC at ¶¶ 57, 60-61, 66-67; Pls.' Opp'n at 8-9. Plaintiffs argue that the statute of limitations must be tolled as a sanction

8

against Defendants. *See*, FAC at 22; Pls.' Opp'n at 8-9. Plaintiffs ask that the statute of limitations be tolled to "the original date of Collective notice in [*Paige*] *v. Arrow Linen Supply Co*[.], Inc." because Defendants prevented Plaintiffs from joining the *Paige* and *Rios* suits. *See*, FAC at 22.

As an initial matter, Plaintiffs do not provide any legal basis for tolling the statute of limitations to August 11, 2016, the date on which the *Rios* collective action notice was approved. *See*, So Ordered Stipulation; *See also*, Notice of Lawsuit. "In an FLSA collective action, 'the statute of limitations applicable to a plaintiff's claim continues to run until he or she has filed a written consent with the court to join the lawsuit.'" *Rotari v. Mitoushi Sushi, Inc.*, 448 F. Supp.3d 246, 254 (E.D.N.Y. 2020) (quoting *Garriga v. Blonde Builders Inc.*, 2018 WL 4861394, at *10 (E.D.N.Y. Sept. 28, 2018)).

Plaintiffs do not offer any factual support that Ross, Foster, or other Arrow Linen employees would have filed the consent to join the *Rios* suit, even if they had received the collective action notice in 2016. Accordingly, the Court declines to engage in a hypothetical analysis. *See*, *Contrera v. Langer*, 278 F. Supp.3d 702, 722-23 (S.D.N.Y. 2017) ("[T]he equitable tolling inquiry is 'a highly factual issue that depends on what and when a plaintiff knew or should have known—an inquiry that is simply impossible to conduct when opt-in plaintiffs and the facts specific to them have not yet been revealed.'") (quoting *Alvarado Balderramo v. Taxi Tours Inc.*, 2017 WL 2533508, at *5 (S.D.N.Y. June 9, 2017)).

Moreover, using the instant motion to sanction Defendants for an alleged violation that took place in a prior and separate action is inappropriate. *See*, Fed. R. Civ. P. 11(c) ("A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)."). Plaintiffs' argument for using the doctrine of equitable tolling as a sanctioning mechanism against Defendants completely ignores the equitable

9

tolling analysis established by the U.S. Supreme Court and the U.S. Court of Appeals for the Second Circuit.

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *See also*, *Zerilli–Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2000). The Second Circuit has noted that "[t]he relevant question when considering a request to toll is whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action, and despite all due diligence he was unable to obtain vital information bearing on the existence of his claim.'" *Lanzetta v. Florio's Enterps. Inc.*, 763 F. Supp.2d 615, 622 (S.D.N.Y. 2011) (quoting *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 323 (2d Cir. 2004) and *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 182 (2d Cir. 2008)) (internal quotation marks and alteration omitted).

It is Plaintiffs' burden to "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of the filing, a demonstration that cannot be made if the [plaintiffs], acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Jenkins v. Greene*, 630 F.3d 298, 303 (2d Cir. 2010); *See also*, *Buttry v. General Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995) ("A defendant may be equitably estopped from asserting the statute of limitations in cases where the plaintiff can prove that he knew of the existence of a cause of action but the defendant's conduct caused [him] to delay in bringing his lawsuit."). An extraordinary circumstance for equitable tolling exists "where a defendant 'concealed from the plaintiff the existence of a cause of action.'"

*Gustafson v. Bell Atl. Corp.*, 171 F. Supp.2d 311, 323 (S.D.N.Y. 2001) (quoting *Cerbone v. Int'l Ladies' Garment Workers' Union*, 768 F.2d 45, 48 (2d Cir. 1985)).

Plaintiffs claim that they learned about their rights under the FLSA in November 2019, when Ross found out about the *Paige* and *Rios* lawsuits. *See*, FAC at ¶¶ 62-64. However, the relevant inquiry is whether Defendants stopped Plaintiffs from discovering the underlying cause of action. *See*, *Gustafson*, 171 F. Supp.2d at 323 ("[I]t is clear that plaintiff knew the facts that would comprise a cause of action under either the FLSA or New York law (that he was receiving straight pay for overtime) even if he did not know that he had a legal claim under those statutes. There is thus no basis for applying the doctrine of equitable tolling."); *See also*, *Cerbone*, 768 F.2d at 48 ("[T]he statute does not begin to run until the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence after being apprised of sufficient facts to put him on notice.").

There are no facts to suggest that Defendants prevented Plaintiffs from discovering their wage and payment claims. In fact, while he was employed at Arrow Linen, Ross knew that he was not being paid for all the hours he worked. *See*, FAC at ¶ 43. Even if Defendants willfully withheld Plaintiffs' information in *Rios*, at most, Defendants prevented Plaintiffs from joining the *Rios* action. Plaintiffs fail to demonstrate that Defendants prevented them from pursuing their own FLSA actions. Plaintiffs' diligence in pursuing their FLSA claims must be separate from the diligence of the *Paige* and *Rios* plaintiffs. *See*, *Contrera*, 278 F. Supp.3d at 724 ("[T]he test for equitable tolling is not concerned with the diligence of a plaintiff who has already timely filed a claim, but rather with the diligence of a plaintiff who is seeking the application of the doctrine.").

As such, Plaintiffs' request for equitable tolling, whether made on their own behalf or on behalf of future opt-in employees, must be denied "given that there has been no showing that they

11

have met the 'diligence' prong of the equitable tolling doctrine." *Id.* at 725. Accordingly, Plaintiffs' FLSA claims are barred under the statute of limitations and are, therefore, dismissed with prejudice.

## II.     NYLL Claims

The "traditional values of judicial economy, convenience, fairness, and comity" weigh in favor of declining to exercise supplemental jurisdiction when all federal law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 119 (2d Cir. 2006) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Having dismissed all of the federal claims in this case, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law and regulatory causes of action. *See*, *Id.* at 122 (citing 28 U.S.C. § 1367(c)(3)).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss this action is granted and the Court declines to exercise supplemental jurisdiction over the state law claims.

SO ORDERED.

Dated:  Brooklyn, New York
        March 31, 2021

                                                    /s/
                                            DORA L. IRIZARRY
                                            United States District Judge